AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of the Samsung Smartphone bearing IMEI # 357013299900946 | Case No. 21-8119 MB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before  May 23, 2021 *(not to exceed 14 days)*  ☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to U.S. Magistrate Judge John Z. Boyle.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days (*not to exceed 30*) ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 5-11-21 @ 1:57 p.m.     *[signature]*
                                              *Judge's signature*

City and state: Phoenix, Arizona     Honorable John Z. Boyle, U.S. Magistrate Judge
                                     *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a grey Samsung Smartphone cellular telephone bearing IMEI # 357013299900946 (hereafter the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently located at Yuma Border Patrol Station evidence vault, filed under FP&F number 2021215300034401, secured in evidence bag A3282872, and has been in USBP custody since it was seized on April 20, 2021.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 8 U.S.C. § 1324, including:

    a. all information related to the smuggling, receipt, transportation, housing, transfer, or hiding of undocumented citizens who do not have immigration status in the United States;

    b. all information related to the smuggling of undocumented citizens who do not have immigration status in the United States (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. any records indicating sources, types, amounts, and prices of fees associated to the smuggling of illegal aliens as well as dates, places, and amounts of specific transactions;

    d. all information regarding the receipt, transfer, possession, transportation, or use of proceeds generated from the smuggling of undocumented citizens who do not have immigration status in the United States;

    e. all bank records, checks, credit card bills, account information, or other financial records;

    f. any information recording schedule or travel;

    g. evidence indicting the cellular telephone user's state of mind as it relates to the crime under investigation; and,

    h. contextual information necessary to understand the above evidence.

  2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

  As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of the Samsung Smartphone bearing IMEI # 357013299900946 | Case No. 21-8119 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Border Patrol Agent Ben Hauck**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Marcus Shand *MS*

*Applicant's Signature*

Benjamin Hauck, Border Patrol Agent
*Printed name and title*

Sworn to me telephonically.

Date: 5-11-21 @ 1:57 p.m.

*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a grey Samsung Smartphone cellular telephone bearing IMEI # 357013299900946 (hereafter the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently located at Yuma Border Patrol Station evidence vault, filed under FP&F number 2021215300034401, secured in evidence bag A3282872, and has been in USBP custody since it was seized on April 20, 2021.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 8 U.S.C. § 1324, including:

    a. all information related to the smuggling, receipt, transportation, housing, transfer, or hiding of undocumented citizens who do not have immigration status in the United States;

    b. all information related to the smuggling of undocumented citizens who do not have immigration status in the United States (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. any records indicating sources, types, amounts, and prices of fees associated to the smuggling of illegal aliens as well as dates, places, and amounts of specific transactions;

    d. all information regarding the receipt, transfer, possession, transportation, or use of proceeds generated from the smuggling of undocumented citizens who do not have immigration status in the United States;

    e. all bank records, checks, credit card bills, account information, or other financial records;

    f. any information recording schedule or travel;

    g. evidence indicting the cellular telephone user's state of mind as it relates to the crime under investigation; and,

      h.    contextual information necessary to understand the above evidence.

2.    Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Benjamin Hauck, being first duly sworn, hereby deposes and states as follows:

### I. PRELIMINARY BACKGROUND INFORMATION

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am a Border Patrol agent employed by Department of Homeland Security (DHS), Customs and Border Protection (CBP), Office of Border Patrol (OBP) since February 19, 2009. I am currently assigned to the Yuma, Arizona (AZ) Sector Border Patrol Intelligence Unit and am a Task Force Officer (TFO) at the Yuma Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF). Prior to being on the JTTF, I worked on the Safe Streets Task Force (SSTF) at the Yuma FBI. I have been a TFO at the FBI since February 2017. The FBI JTTF is responsible for complex national security, counterintelligence and criminal investigations. The SSTF pursues proactive and coordinated investigations with other local and federal agencies to target and dismantle street gangs and their associates responsible for criminal activity. My position within the Yuma, AZ Sector Border Patrol Intelligence Unit is a permanent one. I have been serving in this capacity since August 2016. I am a law enforcement officer and am empowered by federal law to conduct investigations and make arrests for federal offenses, including those enumerated in 8 U.S.C. § 1324, Transportation of Illegal Aliens. Prior to becoming a Border Patrol agent, I received a bachelor's degree in Sociology from the University of Maine at Orono.

3. I received law enforcement training that has complimented my knowledge and experience as a BPA. My training included the Basic Border Patrol Academy at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico as well as other training, seminars, and courses provided by local, state, and private entities throughout the course of my career.

4. During the course of my employment as a law enforcement officer, I have participated in numerous alien smuggling investigations, which have resulted in the arrests of targets, arrests of persons illegally present in the United States, the seizure of conveyances, cellular telephones, and alien smuggling-related evidence, and the forfeiture of alien smuggling-related assets. I have participated in and executed search and seizure warrants authorizing the search of locations used by persons smuggling aliens and their co-conspirators, as well as vehicles used to transport persons illegally present in the United States. Materials searched for and recovered during those investigations have included financial ledgers, maps, directions, pickup and drop off locations, Global Positioning System information, food and drink provisions, materials used to obscure footprints while attempting to illegally enter the United States, weapons, documents, messages, and papers reflecting the identities of co-conspirators, receipts for concealed investments, and proceeds from the smuggling of persons illegally present in the United States. I have personally participated in interviews of witnesses and cooperating sources regarding alien smuggling activities and have read official reports of similar interviews by other officers. I have also participated in surveillance operations, observing, and recording movements of persons smuggling aliens and those suspected of smuggling aliens. Additionally, as a Border Patrol agent at Yuma Station, I worked on the Yuma Border Patrol Sector Prosecutions unit where I worked closely with multiple Assistant United States Attorney's Offices (AUSAO) reviewing criminal cases and determining appropriate charges a defendant should receive, to include alien smuggling cases. During my time at Yuma

2

Border Patrol station, I also worked as a Lead Screening Officer at the Yuma Sector Screening and Removal Office (SRO). During that time, I managed the daily logistics involved with the adjudication, detention and transportation of subjects who were pending prosecution or removal. I provided dispositions on case files and reviewed agent's cases for accuracy. During my time in the SRO, I gave a quarterly training to Yuma Station agents on the steps on how to process an alien smuggling case.

5. Through training and experience, I know that alien smugglers commonly use cellular telephones, and other communication devices, to communicate with their associates and to facilitate the transportation and housing of person illegal present in the United States. These communication devices contain electronically stored data, including, but not limited to, contact names and numbers of alien smuggler associates, call details including call and text message history, email messages, text messages, images related to the alien smuggling, their associates and their alien smuggling activities, and ledgers or other records of alien smuggling activities, all of which can be used to identify and locate associates of alien smugglers, identify organizational methods of operation, and corroborate other evidence learned during the course of an investigation.

6. The statements contained in this Affidavit are based on information derived from my personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and analysis of public records. I have conferred with other Border Patrol Agents and other law enforcement officers, who share the opinions and conclusions stated herein.

7. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all the relevant facts known to law enforcement officers.

3

## II. BASIS FOR PROBABLE CAUSE

8. On April 20, 2021, at approximately 2207 hours, Yuma County Sheriff's Office (YCSO) Investigator A. Jaimez observed a grey Nissan Station Wagon bearing Georgia (GA) License Plate RUC7874 traveling eastbound on Interstate 8 at approximately mile maker 57. This location is approximately 10 miles west of Dateland, AZ located within Yuma, County. While observing the vehicle, Investigator Jaimez noted vehicle swerve from the number two lane to the number one lane and then re-adjust back to the number two lane. Based on the driver's inability to stay within his lane, Investigator Jaimez conducted a traffic stop at mile marker 58.

9. As Investigator Jaimez approached the vehicle, he observed that the vehicle was occupied by six subjects, the driver (later identified as Adrian DIAZ-Cabada) presented Investigator Jaimez a driver's license and vehicle information. Investigator Jaimez asked the front seat passenger for identification. The passenger ignored Investigator Jaimez. Investigator Jaimez tried several times to ask the front passenger in English for identification without a response. Investigator Jaimez asked the passenger for identification in Spanish to which he replied that he did not have identification. Investigator Jaimez noticed that the front seat passenger appeared to get very nervous and would not make eye contact with him. Investigator Jaimez told DIAZ he would come back to the vehicle after conducting some records checks. Investigator Jaimez noticed that a United States Border Patrol vehicle driven by Border Patrol Agent (BPA R. Marquez, Jr. had stopped at his location to provide assistance. Investigator Jaimez told the BPA Marquez that the passenger did not have any form of identification and appeared to be very nervous.

10. As BPA Marquez approached the vehicle, he noticed the YCSO Investigator Jaimez talking to the occupants of a black Nissan Pathfinder bearing Georgia license plate number RUC7874. BPA Marquez noticed that DIAZ and five passengers were exhibiting nervous behavior by avoiding eye contact with YCSO Investigator Jaimez and sitting

4

completely still. BPA Marquez also noticed that there was a case of water bottles in the backseat, that the passengers were dirty, and that the passengers smelled like sweat. He recognized that these observations were consistent with undocumented migrants that travel across the desert after crossing the border illegally.

11. At this time, BPA Marquez identified himself as United States Border Patrol Agent and questioned DIAZ as to his citizenship. DIAZ claimed to be a United States citizen. BPA Marquez questioned the passengers about their citizenship, to which all five passengers identified themselves as citizens of Mexico without proper documentation to be in or pass through the United States legally. BPA Marquez informed all the passengers that they were under arrest. DIAZ and the five passengers were transported to the Wellton Border Patrol Station for further processing.

12. At the time of his arrest, DIAZ was in possession of the SUBJECT CELLULAR TELEPHONE. The SUBJECT CELLULAR TELEPHONE was seized by the United States Border Patrol and is currently in storage at the Yuma Border Patrol Station, Evidence Vault. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the United States Border Patrol.

13. DIAZ was subsequently interviewed by Border Patrol Agents. At approximately 0122 hours, DIAZ invoked his right to remain silent. After reviewing all available law enforcement databases, it was discovered that DIAZ had four prior arrests for alien smuggling. On November 1, 2018, DIAZ was arrested by El Centro, CA Border Patrol agents after he was encountered in a vehicle with three illegal aliens. On November 9, 2018, DIAZ was arrested by Border Patrol agents from the Campo, CA station after he was encountered with three illegal aliens in his vehicle at the immigration checkpoint on

Interstate 8 in Pine Valley, CA. On December 5, 2018, DIAZ was again encountered by Wellton Border Patrol agents with one illegal alien in his vehicle at the Wellton, AZ immigration checkpoint. On December 21, 2020, DIAZ was arrested by Calexico Border Patrol agents with ten illegal aliens at a known stash house in Calexico, CA. During all aforementioned events, DIAZ invoked his Miranda rights, was charged administratively for alien smuggling and released.

14. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

15. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following: Alien smugglers commonly use cellular telephones to communicate with other alien smugglers, associates, and smuggling facilitators about alien smuggling activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, alien smugglers commonly use other capabilities of cellular telephones to further their alien smuggling activities. Therefore, evidence related to alien smuggling activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

16. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### III. ITEMS TO BE SEIZED

17. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

18. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

    a. Alien smugglers use cellular telephones to arrange, coordinate and monitor illegal activities including communicating with other co-conspirators during counter-surveillance to warn of the presence of law enforcement or other potential obstacles to their smuggling plans.

    b. Alien smugglers use self-contained digital video and audio recording devices of cellular telephones to conduct surveillance of law enforcement activities to benefit the counter-surveillance capabilities and intelligence collection of criminal enterprises.

    c. Alien smugglers use all the communication technologies available within the particular cellular telephone, including voice messaging, texting, audio communication, direct dial, push-to-talk, emailing, internet access, photo and video images and contact lists containing information to transmit, relay or otherwise distribute verbal, video and audio information related to the planning or commission of activities in violation of federal law.

    d. Alien smugglers use electronic devices such as cell phones to aid their efforts in thwarting law enforcement detection. Smugglers often use cellular phones to communicate amongst co-conspirators, coordinating the pickup and delivery of smuggled illegal aliens at designated locations. Thus, the cellular phones would aid in the identification of co-conspirators both known and unknown, who are involved in

7

coordinating the smuggling, transportation and financial transactions associated with the smuggling of illegal aliens into and throughout the United States. Therefore, evidence related to alien smuggling activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

19. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

20. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

21. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

8

b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and

9

when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

    a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence

10

and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence

11

of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

25. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 8 U.S.C. § 1324, Transportation of Illegal Aliens, are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

Border Patrol Agent Benjamin Hauck
United States Border Patrol

Subscribed and sworn to before me this  11  day of  May , 2021.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge